1 | **LAW OFFICES OF STEVEN R. FOX**
Steven R. Fox, SBN 138808
2 | 17835 Ventura Blvd., Suite 306
Encino, CA 91316
3 | (818)774-3545; FAX (818)774-3707

4

5 | Attorneys for Debtor-in-Possession

6

7

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **WOODLAND HILLS DIVISION**

11 | In re ) **CASE NO: SV 09-16236 KT**
) **CHAPTER 11**
12 |
13 | Engineered Framing Systems, ) **EMERGENCY APPLICATION FOR AUTHORITY TO USE CASH COLLATERAL ON AN INTERIM AND FINAL BASIS**
14 |
15 | Debtor. ) Date : May 29, 2009
Time : 1:30 p.m.
16 | Place : Room 303
17 | ) **FIRST DAY DECLARATION OF JOHN DURST CONCURRENTLY FILED**
18 | Petition filed May 26, 2009
19 | ) 
20 | **TO ALL PARTIES ENTITLED TO NOTICE:**

21 | **PLEASE TAKE NOTICE** that Debtor-in-Possession, Engineered Framing

22 | Systems, Inc., has filed its "Emergency Application for Authority to Use Cash

23 | Collateral on an Interim and Final Basis" ("Application"). The Application has been

24 | served on the U.S. Trustee, creditors asserting liens in the Debtor's monies and the

25 | 20 largest unsecured creditors. The hearing on the Application will be set by the

26 | Court and you will receive notice of the date and time of the hearing.

27 | By this Application, the Debtor seeks authorization to use its monies to operate

28 | its business, to honor existing and future contracts for work and to do so first on an

- 1 -

1    cash collateral, the Debtor would need to cease its business operation and to let its

2    employees go.

3        You are not required to take any action. You will be advised as to the date,

4    time and place of the hearing on this Application and also the last day and time to

5    timely file an opposition, if any, to this Application. Any opposition should state the

6    nature of the opposition and provide admissible evidence to support an opposition.

7    Please refer to the Local Bankruptcy Rules for further information.

8    Dated: May 26, 2009                LAW OFFICES OF STEVEN R. FOX

9

10

11                                     Steven R. Fox, proposed counsel for

12                                     Engineered Framing Systems, Inc., Debtor-in-Possession

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF CONTENTS

2

I.     Introduction and Summary of Relief Requested . . . . . . . . . . . . . . . . . . . . 4

3

II.    The Debtor, Its Business, and the Financial Difficulties. . . . . . . . . . . . . . 5

4

III.   The Debtor has Taken Significant Steps to Reorganize

5

       and Will Continue to Do So During the Chapter 11 Case. . . . . . . . . . . . 6

6

IV.    Post-Petition Events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7

V.     The Debtor's Assets, Income, Expenses and Liabilities. . . . . . . . . . . . . .  7

8

VI.    Request for Authority to Use Cash Collateral.  Bank of the West

9

       Is an Over Secured Creditor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10

VII.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11

12

TABLE OF CASES AND STATUTES

13

Security Leasing Partners v. ProAlert (In ProAlert),

14

314 B.R. 436 (Bankr. 9th Cir. B.A.P. 2004)   . . . . . . . . . . . . . . . . . . . . 4,10,11

15

16

17

§361 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF APPLICATION FOR
2
## AUTHORITY TO USE CASH COLLATERAL
## ON AN INTERIM AND FINAL BASIS

3

4   1.   This case was commenced on May 26, 2009, by the filing of a voluntary

5   petition for relief under Chapter 11 of the U. S. Bankruptcy Code. Since then,

6   the Debtor has been, and continues to be, a Debtor-in-Possession.   No

7   examiner or trustee has been appointed and no official committee of creditors

8   has been established.

9                                         I.

10              Introduction and Summary of Relief Requested

11  2.   The Debtor is one of the five largest roofing sub-contractors providing roof

12  structure design and construction services in the Southern California area for

13  commercial and industrial buildings.  Relatively few companies have the skill,

14  expertise, experience and size to construct roofs using the most efficient and

15  inexpensive construction method (panelized roof structure or PRS) These jobs

16  typically are union jobs. Large buildings such as Home Depots, sports centers,

17  and others typically employ PRS for their roofs. The Debtor was the subject of

18  embezzlement by its bookkeeper and its payroll service and owes considerable

19  monies to the IRS.  The Debtor also is delinquent in making payments to the

20  Carpenters Trust Fund.

21  3.   LBR 4001-2 (c).  The Debtor requests that the Court set an immediate hearing

22  on this Application.  The Debtor seeks authority to use cash collateral on an

23  interim basis under the 30 day income and expense budget and cash flow

24  analysis ("budget") attached to the concurrently filed First Day Declaration of

25  John Durst.  The budget is incorporated herein.  The Debtor also requests that

26  the Court set a hearing to authorize the Debtor to use cash collateral on a final

27  basis and in the ordinary course of business. The Debtor seeks authority under

28  Security Leasing Partners v. ProAlert (In re ProAlert), 314 B.R. 436 (9th Cir.

1  B.A.P. 2004) to use cash collateral to pay professional fees that may be
2  incurred following depletion of retainers.  The Debtor requests approval of a
3  provision for a carve out for its professionals.

4  II.

5  **The Debtor, Its Business, and the Financial Difficulties.**

6  4.  The concurrently filed First Day Declaration of John Durst provides
7  considerable information concerning EFS's business and the financial
8  difficulties which lead to its chapter 11 filing.  What follows is a short
9  summary.

10  5.  EFS does commercial and industrial panelized roof structures ("PRS") and
11  rough carpentry.  PRS is the superstructure of the roof system of the building.
12  Along with PRS work, EFS also does rough carpentry or wooden framing for
13  walls and wooden stairways (both public stairways and in stairwells).  EFS also
14  does seismic retrofit work on commercial and industrial buildings.   EFS
15  constructs the superstructure of the roof to tie buildings together.  There are
16  relatively few companies providing PRS construction given the difficult
17  engineering issues involved.  One advantage EFS holds is that one of its
18  shareholders is a licensed engineer.  This allows EFS to hold its engineering
19  costs down.

20  6.  Prepetition, EFS was hit by two embezzlements. The more serious one resulted
21  in EFS not paying payroll taxes for several quarters.  This amounted to
22  hundreds of thousands of dollars.  The payroll service was stealing the payroll
23  tax monies.  The loss of the money and the efforts to make up for the stolen
24  money cost EFS dearly.  The Debtor has paid down or paid off the EDD and
25  has paid a lot of money to the IRS.  The embezzlements have made it tough
26  for EFS to remain current in contractual payments to the Carpenters Trust
27  Fund. The slowing economy, the change in the nature of jobs, EFS' decision
28  to retain its body of workers, a decision to take jobs to keep the workers

- 5 -

1  working (even though the jobs cost EFS dearly) all have hit EFS hard.

2  7.    The Debtor typically employs 60 employees.

3                                III.

4        **The Debtor Is Taking Steps to Reorganize**

5      **and Will Continue to Do So During the Chapter 11 Case.**

6  8.    Despite its problems and the recession, the Debtor's economic prospects are
7        good. Overtime, the Debtor's historical business will return. The Debtor has
8        an in-house engineer, Timothy McCarthy. Having an engineer on staff, unlike
9        the competing roofing companies, helps to keep costs down. As demand for
10       PRS returns, there will still only be five companies that are large enough,
11       skillful enough, have the insurance requirements, have a collective bargaining
12       agreement with the Carpenters, be a union shop and otherwise meet the
13       qualifications to bid on and obtain contracts.

14 9.    The Debtor is using its expertise with roof structures to bid on (and is obtaining
15       contracts for) church roof work. Church roofs are large truss roof structures.
16       Most roofing companies cannot handle large church roof construction so this
17       is a fertile opportunity for EFS. The Debtor is using the same expertise to look
18       for green roofing work, that is, reinforcing existing roofs so they can support
19       solar panels. This work requires the significant expense of an engineer. The
20       Debtor, having an engineer on staff, can often under bid its competitors.

21 10.   The Debtor recently hired a C.F.O. who intends to transform EFS into a smaller
22       but profitable company. He is also working to prepare the company for when
23       economic times get better.

24                                IV.

25                      **Post-Petition Events**

26 11.   The Debtor has taken steps to comply with its obligations as a Debtor-in-
27       Possession. The Debtor filed complete schedules and various first day motions
28       and applications and is providing to the U.S. Trustee proof of insurance and

                                - 6 -

1   other compliance documentation.  The Debtor maintains on a current basis
2   workers compensation, general liability and products liability insurances.

3                                        V.

4            **The Debtor's Assets, Income, Expenses and Liabilities.**

5   12.   Assets.  Please see the concurrently filed First Day Declaration of John Durst.
6         The Debtor's assets are varied.  They include receivables which, as of May 20,
7         2009, amounted to approximately $1,024,000.00.  Based on monies owed
8         and monies which the Debtor is likely to earn in the coming months, the
9         Debtor's receivables will exceed $4,000,000.00.  Almost 100% of these
10        receivables will be collected.  The Debtor's other assets include inventory,
11        machinery and equipment, tools, vehicles, and other personal property.

12  13.   Income and Expenses.   The Debtor operates on a fiscal year ending
13        September 30th.  In fiscal year 2005 (ending September 30, 2006, the
14        Debtor's gross receipts were $16,680,131.  In fiscal year 2006, (ending
15        September 30, 2007), the Debtor's gross receipts were $16,637,045.    In
16        fiscal year 2007 (ending September 30, 2008), the Debtor's gross income was
17        $16,046,455.  (This figure is taken from an internally generated P&L.)  In
18        fiscal year 2008, year through May 14 ,2009, the Debtor's gross income was
19        $7,173,341.  The Debtor believes that through September 30th, its gross
20        income will reach $10,000,000.00.

21  14.   Attached to the Durst First Day Declaration are financial reports which offer
22        income and expense information going forward some seven weeks starting
23        with the week ending May 23, 2009, and going through the week ending July
24        4, 2009.  The Debtor will be profitable during this time period and will
25        maintain relatively substantial sums of money in its bank account to deal with
26        the expected C.O.D. terms the vendors will put the Debtor on once the fact of
27        this chapter 11 filing becomes known.

28  15.   Secured Claims.  The IRS and the State of California hold what appears to be

1    secured claims in the Debtor's personal property assets.  The payroll taxes

2    owed to the IRS showing on the liens amounts to perhaps $900,000.00.  The

3    Debtor believes that it paid off payroll taxes owed to the EDD but the state did

4    not remove its liens.  It is possible that the Debtor owes a nominal amount of

5    money to the EDD. For purposes of this Application only, EFS assumes that the

6    IRS's and the EDD's liens are properly perfected and the liens attach to cash

7    collateral.  Copies of the FTLs and the EDD's liens are attached to the Durst

8    First Day Declaration.  The Debtor is unaware of any other secured claims.

9    16.    Unsecured Claims.  The Debtor's unsecured claims exceed $2.1 million.

10                                      VI.

11                    Request for Authority to Use Cash Collateral.

12    17.    The Debtor requires the use of cash collateral in order to operate its business,

13    to pay employees, to pay rent and utilities, and to complete existing jobs and

14    to perform future jobs.  Without the use of cash collateral, the Debtor will be

15    unable to remain in business.  If the Debtor cannot use the cash collateral, its

16    reputation in the industry will be severely harmed.   Authorizing the relief

17    requested below will benefit the IRS and the EDD as the use of cash collateral

18    will protect its security.  If the tax liens extend to all of the Debtor's assets, then

19    the Debtor does not have unencumbered sources of monies or other assets to

20    pay ordinary course of business obligations.

21    18.    Interim Use.  The Debtor requests that it be authorized to use cash collateral

22    on an interim basis as per the budget ("budget") attached to the First Day

23    Declaration.   The budget is based on the Debtor's historical income and

24    expenses information and also on the Debtor's beliefs as to how income and

25    expenses will change in the near future. The budget is unaudited. The budget

26    also includes a cash flow analysis.  The Debtor's management has made

27    assumptions concerning short term income and expenses which are reflected

28    in the projections.

19. <u>Variance</u>.  Budgeting is not an exact science and depending on the number of orders the Debtor may receive in the period of time before the final hearing, the Debtor requests that it be permitted to vary from the budget above by as much as 20% in any one category.  In the event that the Debtor determines that it will need to vary from any one budgeted item by more than 20%, then the Debtor proposes that it provide written notice by email or telecopier of the variance to the IRS and the EDD and if the IRS and the EDD do not object to the variance within 48 business hours, then the variance will be deemed approved.  In the event either agency objects, then the Debtor will seek to hold a hearing on shortened notice to resolve the dispute.

20. <u>Rolling Unspent Expenses Forward</u>.  The budget is a weekly budget.  Very likely, the Debtor will underspend in various categories in each of the weeks reflected in the budget.  The Debtor requests that the Court authorize the Debtor to carry over from pervious weeks any unused monies to be used in the same categories in future weeks.  The Debtor also requests that the monies carried forward not count toward the 20% variance.

21. <u>The Tax Agencies Are Adequately Secured</u>. [1]  Section 361 defines "adequate protection" in various manners including periodic payments to the secured creditor, replacement liens and other relief.  The IRS is afforded adequate protection of its claim in many ways.

    a.    The tax agencies' claims amount to perhaps $900,000.  The receivables presently are worth more than $1,000,000 and will likely be worth more than $4,000,000 in the next couple of months.

    b.    They can attempt to assess any responsible person.

---

[1]    The tax agencies may be over secured.  Though not waiving this argument, the Debtor assumes here only that they are not over secured.

c.  The security will continue to be protected and preserved as the Debtor continues to operate and the assets of the business are maintained and serviced.

d.  The Debtor's business is continuing to generate additional revenues creating further value for the tax agencies' claims.

e.  All assets are adequately insured. Proof of insurance will be provided to the tax agencies on their request.

f.  The Debtor proposes that the tax agencies be granted a replacement lien in the assets of the estate to the extent that its prepetition liens attached to property of the Debtor with the same validity, priority, and description of collateral.

g.  On request, the Debtor will provide a copy of the monthly operating reports to the tax agencies.

h.  The Court may order the Debtor at the interim or at the final hearing to pay adequate protection payments to the tax agencies.

22.  <u>Final Use of Cash Collateral</u>.  The Debtor requests that the Court set a hearing on final use of cash collateral and, at that hearing, authorize the Debtor to use cash collateral in the ordinary course of business.

23.  <u>Professional Fees</u>.  Prepetition, the Debtor's professionals were paid retainers. This case is a complicated case. The retainers likely will be used up in the next few months.  Pursuant to <u>In ProAlert</u>, 314 B.R. 436 (Bankr. 9th Cir. B.A.P. 2004), the Debtor seeks authority to use cash collateral to pay these fees. If approved, the Debtor would set aside monies monthly and designated for this purposes into a separate bank account. The professionals, after their retainers were drawn down, would make applications for compensation from the monies deposited in the separate bank account. During the case, the Debtor will replenish the monies in the account. The monies would not be withdrawn under the U.S. Trustee's draw-down procedure absent order of the Court.

1    24.    Section 361 defines "adequate protection" in various manners including

2            periodic payments to the secured creditor, replacement liens and other relief.

3            The IRS and EDD are afforded adequate protection of its claim for many

4            reasons, e.g., their security interest in personal property exceeds the value of

5            the assets, any adequate protection payment the Court may order, the

6            ongoing operation of the business and generation of new receivables, and

7            maintenance of insurance.  Payment of professional fees as proposed here

8            enhances the estate's ability to reorganize which also provides further

9            adequate protection to the tax agencies.  They may contend that their claims

10           are under secured but as the Panel in the ProAlert case stated "over-

11           collateralization is simply one possible form of adequate protection." (ProAlert

12           at page 444).

13   25.    Given the size of the assets of the estate, EFS' efforts to pay off and/or pay

14           down the payroll taxes prepetition, and, as the continued operation of the

15           business benefits the tax agencies, the payment of professional fees would

16           benefit them and this request should be granted.

17   26.    Insiders' Compensation.  The budget provides for compensation for insiders

18           Timothy McCarthy and John Durst but the Debtor will not pay insiders pending

19           either an order of the Court or the successful completion of the insider

20           compensation request process utilized under the U.S. Trustee's Guidelines

21   27.    Lease Payment for the Premises.  The Debtor operates from its location on

22           Rinaldi which is a house owned by insider Timothy McCarthy.  The monthly

23           rent he charges is $5,000.  The term is month to month.   The charge

24           intended to cover the mortgage expense, utilities (except water) and repairs.

25           The Debtor requests the Court authorize the Debtor to pay this rental charge

26           to Mr. McCarthy as the charge comes due each month.

27   28.    Waivers and Cash Collateral Stipulation Form 4001-2; Notice.  There is no

28           stipulation for the use of cash collateral.  There are no provisions in the

1   Application that are referenced in  Official Form 4001-2.  The Debtor is not

2   here waiving (1) any right to dispute the validity of any liens, (2) to challenge

3   whether particular assets are subject to a tax agencies' security interest, (3) to

4   invalidate a security interest, (4) to surcharge collateral or (5) to maintain any

5   claims that the Debtor may have against either tax agency.

6   29.   The Application has been served on the U.S. Trustee, on the IRS and EDD and

7   the 20 largest unsecured creditors.  Notice is being provided to the creditor

8   body.

9                                                VII.

10                                          Conclusion

11   The Debtor requests that the Court take the following actions:

12   1.          Set an immediate hearing on this Application.

13   2.          Enter an order authorizing the Debtor to use cash collateral on an

14              interim basis as per Exhibit "A" and grant the 20% and the carry

15              forward provisions discussed above.

16   3.          Set a hearing on final use of cash collateral in the ordinary course

17              of business.

18   4.          Approve the request to set aside monies for professionals.

19   5.          Grant to the tax agencies a replacement lien in collateral of the

20              estate as discussed above.

21   6.          Authorize the Debtor to sat aside monies for payment of the fees

22              and expenses which its professionals will likely incur in the future.

23   7.          Authorize the Debtor to make the monthly lease payment to

24              Timothy McCarthy.

25   8.          Such further relief as the Court deems appropriate.

26

27

28

1  Dated: May 26, 2009                                LAW OFFICES OF STEVEN R. FOX

2

3

4                                                      Steven R. Fox, proposed counsel for
                                                       Engineered Framing Systems, Inc.,
5                                                      Debtor-in-Possession

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| In re: Engineered Systems, Inc.<br><br>Debtor(s) | CHAPTER:  11<br>CASE NUMBER:    09-16236 KT |

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 17835 Ventura Boulevard, Suite 306 Encino, California 91316

A true and correct copy of the foregoing document described as **EMERGENCY APPLICATION FOR AUTHORITY TO USE CASH COLLATERAL ON AN INTERIM AND FINAL BASIS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

＿Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On **5/27/09** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed. **BY OVERNIGHT MAIL**

**X Service information continued on attached page**

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

＿ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 5/27/09 | Nancy C. Hogan | *Nancy C Hogan* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

January 2009                                                                                              **F 9013-3.1**

## 20 LARGEST UNSECURED CREDITORS

A-Line Inc. Crane Services
18032 C Lemon Drive
Suite 212
Yorba Linda, CA 92886

Arrow Steel
10945 Memory Park Ave
Mission Hills, CA 91345

AT&T Mobility
P O Box 6463
Carol Stream, IL
60197-6463

Carpenters Trusts for
Southern CA
533 S Fremont Avenue
Los Angeles, CA
90071-1706

Ford Graphics
681 S. Raymond Avenue
Pasadena, CA 91105

Load Center Inc.
1510 White Avenue
La Verne, CA 91750

NBS
22615 La Vina
Mission Viejo, CA 92691

Orco Construction
Supply-Sun Valley
477 North Canyons Prkwy
Suite A
Livermore, CA 94550

Precision Component Systems
6930 E First St.
Scottsdale, AZ 85251

Quincy Joist Company
520 S Virginia St.
Quincy, FL 32351

Reliable Wholesale Lumber
P O Box 191
Huntington Beach, CA 92648

Roberson Drafting
850 Alsace Loraine
Half Moon Bay, CA 94019

Sky Lift Rentals
P O Box 41527
Los Angeles, CA 90041

Tobin Steel Co, Inc.
P O Box 717
Santa Ana, CA 92702

Tomarco
14848 Northam Street
La Mirada, CA 90638

Weyrick Companies
P O Box 688
Templeton, CA 93465

White Cap
P O Box 1770
Costa Mesa, CA 92628-9901

GC Fence & Welding
16127 Francisquito Ave
La Puente, CA 91744

Glu Lam Industries
3909 S 8000 West
Magna, UT 84044

McIntyre Co.
872 Towne Center Drive
Pomona, CA 91767-5902

## OTHER:

Employment Development
Department
Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Internal Revenue Service
ACS Support-Stop 813G
PO Box 145566
Cincinnati, OH 45250-5566

Internal Revenue Service
Box 21126
Philadelphia, PA 19114

IRS - LA & SFV
Ch 7,11,13 Noticing
Insolvency Stop 5022
300 N Los Angeles St,
Room 4062
Los Angeles, CA 90012-9903

Office of the U. S. Trustee
21051 Warner Center Lane
Suite 115
Woodland Hills, CA 91367